# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JOHN D. SCHREIBER,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| vs. | ) | **Civil Action No. 08-110E** |
| | ) | |
| **STERIS CORPORATION,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## OPINION

This is a civil action filed by Plaintiff John Schreiber (Schreiber") against

Defendant Steris Corporation ("Steris") for violation of the Worker Adjustment and

Retraining Notification Act ("WARN Act"), 21 U.S.C. § 2101 et seq., and for common

law breach of contract. In his Complaint, Schreiber contended that Steris failed to provide

him with the proper notices regarding the termination of his employment in violation of

the WARN Act and that Steris breached contracts entered into between the parties with

respect to a retention bonus and a severance/benefits package. Defendant STERIS filed a

motion for summary judgment [Doc. #19] will respect to all of the claims brought against

it by Schreiber.  In his response to Defendant's Motion, Schreiber stated that he was no

longer pursuing his WARN Act claim against STERIS. Plaintiff's Brief in Opposition to

Defendant's Motion for Summary Judgment ("Plaintiff's Opposition Brief"), p. 7 n.1.

Accordingly, summary judgment shall be entered in favor of Defendant on Plaintiff's

WARN Act claim without further analysis and we will substantively address only the

parties' contentions with respect to Plaintiff's breach of contract claim. For the reasons

set forth below, Defendant's Motion for Summary Judgment on Plaintiff's breach of

contract claim is granted.

## I. Standard of Review.

Summary judgment is appropriate when the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, fail to

demonstrate a genuine issue of material fact and thus, the moving party is entitled to

judgment as a matter of law. Fed. R. Civ. P. 56(c). In other words, summary judgment

may be granted only if there exists no genuine issue of material fact that would permit a

reasonable jury to find for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477

U.S. 242, 250, 106 S.Ct. 2505 (1986).

The moving party may meet its burden on summary judgment by showing that the

nonmoving party's evidence is insufficient to carry the burden of persuasion at trial.

Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, 106 S.Ct 2548 (1986). The nonmoving

party must then go beyond the pleadings and, by affidavits, depositions, answers to

interrogatories, and admissions on file, designate facts showing that a genuine issue of

material fact remains for trial. Id. at 324. In deciding a motion for summary judgment,

the facts must be viewed in a light most favorable to the nonmoving party and all

inferences must be drawn in that party's favor." Gray v. York Newspapers, Inc., 957 F.2d

1070, 1078 (3d Cir. 1992).

2

**II. Relevant Facts**.

Following is a statement of the relevant facts contained in the record viewed in a light most favorable to Plaintiff as the non-moving party.

Plaintiff John Schreiber was employed by American Sterilizer Company and later by its successor, Defendant STERIS Corporation, from April 14, 1979 until his resignation from employment on June 22, 2007. (Schreiber Deposition, pp. 16-17.)  At the time of his resignation, Plaintiff was a Senior Operations Engineer. (Id. at p. 23)

On January 30, 2006, STERIS, via an e-mail from its President and CEO Les Vinney, announced to Schreiber and other STERIS employees at its Erie, Pennsylvania facility that the manufacturing operations at the Erie facility would be transferred to a new STERIS facility in Mexico. (Exhibit 2 to Schreiber's Deposition)  The statement announcing the transfer explained, in pertinent part, that "[t]he transition of operations from Erie to Mexico will occur over a long period of time. . . ." (Id.)  The announcement also explained that the new production facility was expected to be operation in the summer of 2007. (Id.)  Numerous jobs were to be eliminated as a result of the transfer of the manufacturing operations to Mexico, including Plaintiff's position.

The transfer of manufacturing operations from the Erie facility to the Mexico facility involved moving equipment and related manufacturing processes, approximately 2700 line items, all of which had to be interlocked. (George Hall Deposition, pp. 12-13.)

3

On February 10, 2006, a follow-up e-mail was sent out to STERIS employees of the Erie facility from George Hall ("Hall"), Vice President and Project Leader. (Exhibit 3 to Schreiber's Deposition.) The e-mail explained that the employees were being put into sub-groups. Plaintiff was made part of the Transition Group; the Transition Group was to "concentrate on the coordination and execution of activities to facilitate the movement of equipment and inventory to Mexico, as well as developing training, drawing and engineering documentation to establish start-up of the new operation." (Id.)

On March 15, 2006, Plaintiff sent out an e-mail that listed machine groupings and set forth when they were scheduled to be transitioned to Mexico. (Exhibit 4 to Schreiber's Deposition.) The first group of machinery (Group #1) was be moved between October 1, 2006 and February 1, 2007. (Id.) The final group of Machinery (Group #3) was to be moved between May 1, 2007 and September 1, 2007. (Id.) On March 31, 2006 and April 3, 2006, Plaintiff sent out additional correspondence which indicated that movement of the machinery from Erie to Mexico would take place up to September, 2007. (Exhibits 5 and 6 to Schreiber's Deposition.)

On May 8, 2006, Plaintiff received an e-mail from Hall. (Exhibit 7 to Schreiber's Deposition.) The subject of the e-mail was "Retention Incentive." (Id.) The e-mail stated in pertinent part:

> To recognize your contributions, your role in the project, and your
> continued support, I am pleased to let you know that the Company will
> provide you with a special incentive payment. You will be eligible to
> receive a special lump sum incentive payment equal to 20% of your annual

4

base pay (subject to regular withholding taxes). This payment will be made
only after working through your designated last day of work and will be
made in addition to the severance package that will be offered to all
impacted salaried employees.

(Id.) (emphasis added.) Plaintiff signed a copy of the memorandum on May 11, 2006.

(Schreiber Deposition, p. 38.)

Plaintiff also received a letter from Hall and Karen Ralston ("Ralston"), Human

Resources Manager, dated June 5, 2006, which stated in pertinent part:

As a result of the transfer of the Erie Manufacturing Operation, it has been
determined that your position will be eliminated. Based on your length of
service, you are eligible to receive severance in the in the form of salary
continuation for a period of 26 weeks after your separation date. . . . In
addition, your medical, dental, and prescription drug insurance coverage at
the time of your release will continue while you receive salary continuation.
. . .

Your severance payment is contingent upon your continued satisfactory
performance and continued employment with the company through your
separation date. Please note that we are providing only an estimated
separation date in this letter. In addition, as is standard practice, to qualify
to receive continuation payments, you will be required to enter into a
Separation Agreement and General Release.

For your general information we currently anticipate your separation date to
be 5/1/2007. This date is solely our best estimate as of the date of this letter
and is subject to change. Unfortunately, there are a number of variables that
can significantly affect the transfer and shutdown process, and many of
these are not within our control. We are committed to providing as much
notice of the actual release date as possible, and we will provide you with at
least 60 days notice prior to your separation date.

(Exhibit 9 to Schreiber's Deposition.) (emphasis in original) Upon receiving the June 5,

2006 memorandum, Plaintiff gave Ralston and Ron Stimpson a letter dated June 5, 2006,

5

in which Plaintiff asked for benefits and compensation in excess of which STERIS had
promised its employees to date. (Exhibit 10 to Schreiber Deposition; Schreiber
Deposition, pp. 42-44.) Plaintiff's request was denied. (Schreiber Deposition, p. 46.)

On December 12, 2006, Schreiber sent another letter to Hall, again asking for
payment in excess of what had been agreed to earlier with respect to severance and bonus
payments. (Exhibit 11 to Schreiber Deposition, Schreiber Deposition, p. 47.) On January
8, 2007, Defendant again denied Plaintiff's request. (Exhibit 12 to Schreiber Deposition.)

On March 2, 2007, Hall sent Plaintiff a letter that contained the following pertinent
information:

> As previously indicated to you, your position was projected to be eliminated
> on May 1, 2007. It has recently been determined that your estimated release
> date is now May 30, 2007. This change in date is due to the delay in
> equipment moves. This release date is our best estimate at this point in time
> and could change due to business needs associated with the transfer of Erie
> Manufacturing operations.

(Exhibit 16 to Schreiber's Deposition.) On March 27, 2007, Hall sent Plaintiff a letter
that contained the following pertinent information:

> I am writing in accordance with the Worker Adjustment and Retraining
> Notification Act ("WARN"). As we previously notified you, STERIS
> Corporation is permanently closing part of its facility . . . commencing July
> 31, 2006. As previously indicated to you, your position is projected to be
> eliminated on May 30, 2007, or within 14 days thereafter. This release date
> is our best estimate at this point in time and could change due to business
> needs associated with the transfer of Erie Manufacturing operations.

(emphasis added) (Exhibit 17 to Schreiber's Deposition.)

6

On April 19, 2007, Pat Lichtinger ("Lichtinger") sent Plaintiff an e-mail that provided Plaintiff and others with an updated equipment moves master schedule. (Exhibit 19 to Schreiber's Deposition.)  The schedule showed that there was still equipment that needed to be transferred to the STERIS facility in Mexico. (Id.)

Lichtinger sent another updated equipment schedule via e-mail on May 8, 2007. (Exhibit 22 to Schreiber's Deposition.)  Again, the schedule showed that there was still equipment that needed to be transferred to the STERIS facility in Mexico. (Id.)

Plaintiff interviewed with another company, Automation Devices, in or about early May, 2007. (Schreiber Deposition, p. 66.)  On May 11, 2007, Plaintiff sent STERIS a letter explaining that he had tentatively accepted another position with a start date of June 4, 2007:

> This letter is to inform you that I have tentatively accepted a position with another company with a potential starting date of June 4, 2007. This potential start date was negotiated and selected with this employer in order that I may fulfill my commitment to STERIS through my current severance date of May 30, 2007.  . . .  My desire is that my term of employment with STERIS not be extended, and I ask that all severance benefits and bonuses that STERIS has presented to me will be prepared and forwarded to me at the appropriate time.

(Exhibit 23 to Schreiber's Deposition.)

Sometime shortly after May 11, 2007 Plaintiff told his potential employer, Automation Devices, that he could not take the position offered. (Schreiber Deposition, p. 77.)  Plaintiff did not take the new position because STERIS had not told him whether

7

or not he could quit his position as of June 4, 2007, the date Plaintiff planned to leave
STERIS, and get paid his bonus and severance payments. (Id.) As of June 4, 2007,
Plaintiff still had not heard from STERIS as to whether or not he could leave to start a
new job on June 4, 2007 and still get paid his stay bonus and severance pay. (Id., p. 78.)

On or about May 14, 2007, Ralston orally advised Plaintiff that his projected
release date had been extended to July 30, 2007. (Ralston Deposition, pp. 34-35.)

On May 14, 2007, Plaintiff interviewed with General Electric ("GE"). (Id., p. 79.)
On or about June 7, 2007, Plaintiff was offered a position by GE; he accepted the position
on June 7, 2007, with a start date of June 25, 2007. (Exhibit 26 to Schreiber's Deposition;
Schreiber Deposition, p. 81.)

On May 14, 2007, and again on May 21, 2007, Lichtinger sent Plaintiff an e-mail
that provided Plaintiff and others with an updated equipment moves master schedule.
(Exhibits 28 and 29 to Schreiber's Deposition.) The schedules showed that there was still
equipment that needed to be transferred to the STERIS facility in Mexico. (Id.)

On May 25, 2007, Plaintiff received an e-mail that set forth the schedule of which
STERIS employees were to travel to Mexico in the month of June, 2007. (Exhibit 31 to
Schreiber Deposition.) Plaintiff was scheduled to travel to Mexico from May 21 to June
1, 2007, and from June 18 to June 29, 2007. (Id.)

On May 28, 2007, Lichtinger sent Plaintiff another e-mail that provided Plaintiff
and others with an updated equipment moves master schedule. (Exhibit 32 to Schreiber's

8

Deposition.) The schedule showed that there was still equipment that needed to be transferred to the STERIS facility in Mexico. (Id.)

In early June, 2007, before Plaintiff accepted the job offer from General Electric, Ralston told Plaintiff that due to project needs, he was needed until September 30, 2007, but that if it would help him with his job situation, that he would be released on August 30, 2007, and he would still get his stay bonus and severance. (Ralston Deposition, p. 37 and errata sheet.) Ralston also offered to call the new HR department to talk to them. (Id. at p. 37.)

On June 8, 2007, Plaintiff sent Defendant a letter concerning his acceptance of the GE employment offer which stated in pertinent part: "This letter is to inform you that I have accepted a position with another company. My agreed to start date with my new employer is Monday, June 25, 2007." (Exhibit 27 to Schreiber Deposition.)

On June 11 and June 18, 2007, Lichtinger sent Plaintiff additional e-mails that provided Plaintiff and others with an updated equipment moves master schedule. (Exhibits 33 and 34 to Schreiber's Deposition.) The schedules showed that there was still equipment that needed to be transferred to the STERIS facility in Mexico. (Id.)

Sometime after May 11, 2007, but before June 21, 2007, Plaintiff told STERIS that he was willing to stay on until the end of 2007 if STERIS agreed to increase his severance and bonus payments. (Schreiber Deposition, pp. 90-91.) In response, on June 21, 2007, Hall wrote Plaintiff a letter which stated in pertinent part:

9

The purpose of this letter is to respond to your request regarding severance and other benefits. Your request was reviewed and some of the factors that were considered included:

- Letters that you received from STERIS that described eligibility for the severance program and a special retention incentive program for key employees. The eligibility included working through the designated last day of work and that the release date was an estimated date, subject to change.

- Notifications to you that the estimated release dates changed (estimated release date changed to 9/30/2007 then subsequently to 8/30/2007 to accommodate your job offer situation)

- Your resignation effective prior to the revised, estimated release date. You voluntarily resigned from STERIS effective June 22, 2007 for other employment

Because your resignation of employment with STERIS® is prior to our revised, estimated release date, it has been determined that you are not eligible for either the severance program or the retention incentive program for key employees. As previously discussed with you by HR, if you can work out an arrangement with your new employer to continue to work at STERIS full-time and including a travel schedule to Mexico through August 30, 2007 you will be eligible for the severance and special retention incentive program for key employees.

(Exhibit 36 to Schreiber's Deposition.)

Plaintiff ended his employment with STERIS on June 22, 2007. (Schreiber Deposition, p. 17.) As of June 22, 2007, not all of the equipment that needed to be transferred from Erie to Mexico had been transferred. (Schreiber deposition, pp. 87-88.)

Plaintiff understood that after May 30, 2007, STERIS still had job responsibilities

for Plaintiff to fulfill:

> I understand that they had responsibilities for me, as was communicated
> numerous times, as my severance date kept changing verbally, and was, I
> believe, initially July 30th, and then September 30th, and then August 30th.
>
> So that would have been the latest date that I would have understood that
> they had employment opportunities for me.

(Schreiber Deposition, p. 92.)

STERIS was aware of Plaintiff's search for other employment. (Patrick Lichtinger

Affidavit, ¶ 7.) STERIS had a continuing need for Plaintiff's services as a Senior

Operating Engineer until at least August 30, 2007. (Id.)

No key STERIS employee was permitted to leave before his separation date and

still receive his bonus. (Ralston Deposition, p. 24.)

## III. Legal Analysis.

### A. Plaintiff's State Law Breach of Contract Claim.

Plaintiff has abandoned his WARN Act claim against STERIS. Plaintiff's

remaining claim against Defendant is a state law breach of contract claim. In its Brief in

Support of its Motion for Summary Judgment, Defendant agues that it did not breach any

contract entered into with Plaintiff because Schreiber failed to satisfy the express terms of

the contracts that required him to stay employed at STERIS until his designated last day

of work. Defendant's Supporting Brief, p.14.

In response, Plaintiff first contends that the following actions by STERIS "violated

their duty to contract in good faith and to engage in fair dealings:"

> a. Steris arbitrarily extended Plaintiff's release date each and every time he
> communicated to defendant a received job offer, yet steadfastly refused to
> give him a firm termination date;
>
> b. Steris acted in bad faith in that they knew Mr. Schreiber did not have the
> ability to negotiate terms at arms length; he needed to remain employed and
> could not bargain on an equal basis with Steris;
> c. Used its superior bargaining power to place plaintiff in an unfair
> situation;
> d. Purposely strung the plaintiff along in order to utilize his skills to setup
> its plant operations in Monterrey, Mexico;
> e. Made it impossible for plaintiff to transfer to a new employer without
> losing his severance package and "stay bonus"; and
> g. Denied plaintiff his bonus despite his 18 month effort to assist Steris in
> the move to Mexico.

Plaintiff's Opposition Brief, p. 6. Schreiber also argues that "Steris's refusal to pay the

bonus to Mr. Schreiber, based upon its ever moving termination date, amounts to

forfeiture" and that the legal doctrine of substantial performance should be applied to the

case at hand because Plaintiff fulfilled all of his obligations under the contracts including

working past May 30, 2007. Id., pp. 3-4.

In reply, Defendant argues that the implied covenant of good faith set forth in the

Restatement (Second) of Contracts is not a cognizable claim under Pennsylvania law, that

an implied duty of good faith cannot override an express provision of a contract, and that

there is no evidence of record to support Plaintiff's claim that STERIS acted in bad faith.

Defendant's Reply Brief, pp. 6-12.

After consideration of the parties' arguments we find that it is not necessary to decide whether or not the implied covenant of good faith set forth in the Restatement (Second) of Contracts is a cognizable claim under Pennsylvania law. Even assuming *arguendo* that under Pennsylvania law Schreiber can bring a claim against STERIS for breach of a covenant of good faith with respect to the stay bonus and severance and benefits agreements entered into by the parties, we find that Plaintiff has not created a genuine issue of material fact as to whether Defendant breached said covenant of good faith with respect to the agreements. To the contrary, even viewing the evidence in a light most favorable to Plaintiff as the non-moving party, it is clear that Plaintiff did not fulfill his duty to continue working until his designated last day of work. Therefore, STERIS was not under any obligation to pay Plaintiff either the bonus pay or the severance pay and benefits at issue.

With respect to the bonus pay offer made on May 8, 2006, which Plaintiff accepted, the offer stated "[t]his payment will be made only after working through your designated last day of work . . . . " Not surprisingly, given such a large scale project, a specific date was not provided in the offer as to when was Plaintiff's designated last day of work. With respect to the severance pay and benefits offer made on June 6, 2006, accepted by Plaintiff, the offer stated:

> Your severance payment is contingent upon your continued satisfactory performance and continued employment with the company through your separation date. Please note that we are providing only an estimated separation date in this letter.

13

. . .

> For your general information we currently anticipate your separation date to
> be 5/1/2007. This date is solely our best estimate as of the date of this letter
> and is subject to change. Unfortunately, there are a number of variables that
> can significantly affect the transfer and shutdown process, and many of
> these are not within our control. We are committed to providing as much
> notice of the actual release date as possible, and we will provide you with at
> least 60 days notice prior to your separation date.

(emphasis in original). Thus, it cannot be disputed that eligibility for both the severance

pay and benefits package and the stay bonus explicitly required working through the last

day of work designated by STERIS, a date that, as explained in the June 2006 letter, could

not be definitely determined in the early stages of such a massive project.

Indeed, as predicted by Defendant in the severance pay and benefits offer,

Plaintiff's separation date did change periodically, first on March 2, 2007 when Plaintiff's

estimated last day of work was changed from May 1, 2007 to May 30, 2007, then again

on March 27, 2007 when Plaintiff was told that his position was expected to terminated

on May 30, 2007 or within fourteen (14) days thereafter, but that said date was an

estimate and subject to change, then again in May 2007, when Plaintiff's estimated end

date was changed to July 30, 2007, and finally, again in early June, 2007 when Plaintiff's

estimated end date was changed to September 30, 2007 (and ultimately moved forward to

August 30, 2007).

Nor is there, contrary to Plaintiff's contention, any evidence of record, even

viewed in a light most favorable to Plaintiff, to support the conclusion that the extensions

14

were arbitrary and designed to ensure that it would not have to pay Plaintiff either the bonus or the severance and benefits payments promised. Rather, the evidence of record supports the conclusion that the transfer of the facility from Erie to Mexico was a mammoth undertaking and that the extensions were due to changes in the schedule of the transfer of the operations. For example, from April to June, 2007, Lichtinger was regularly sending out revised equipment moves master schedules that showed that equipment still remained in Erie that needed to be moved to the Mexico facility. See Exhibits 19, 22, 28-29, and 32-34 of Schreiber's Deposition. Additionally, on May 25, 2007, a date prior to Plaintiff giving notice to STERIS that he was leaving the company, Lichtinger sent Plaintiff an e-mail with his travel schedule for the month of June; the e-mail stated that Plaintiff was to be in Mexico from May 21 until June 1, 2007, and then again from June 18 to June 29, 2007. See Exhibit 31 to Schreiber's Deposition. Finally, Schreiber himself confirmed that at the time of his resignation, he was supposed to be in Mexico working on the project, and that at the time he left STERIS's employment, not all of the equipment had yet been transferred from the Erie facility to the Mexico facility. (Schreiber Deposition, pp. 78, 87-88.)

We also disagree with Plaintiff's contentions that STERIS acted in bad faith in that they knew Schreiber did not have the ability to negotiate terms at arms length because he needed to remain employed and could not bargain on an equal basis with STERIS and that STERIS used its superior bargaining power to place Plaintiff in an unfair situation.

15

The evidence of record, even viewing in a light most favorable to Plaintiff, simply does not support these arguments.

With respect to Plaintiff's argument that "Steris's refusal to pay the bonus to Mr. Schreiber, based upon its ever moving termination date, amounts to forfeiture," we disagree. Plaintiff's Opposition Brief, p. 4. The Restatement (Second) of Contracts, §229 states: "to the extent that the non-occurrence of a condition would cause a disproportionate forfeiture, a court may excuse the non-occurrence of that condition unless this occurrence was a material part of the agreed exchange." Forfeiture is disfavored under the law. Marcin v. Darling Value & MFG Company, 259 F.Supp. 720, 724 (W.D. Pa. 1966). Even viewing the facts of record in a light most favorable to Plaintiff and construing the terms on the contract in favor of Plaintiff and against Defendant, the evidence does not support Plaintiff's position. More specifically, we cannot and will not excuse the non-occurrence of Plaintiff not working until his designated release date as we find that even viewing the facts of record in a light most favorable to Plaintiff, this occurrence, that Plaintiff work until his designated end date, was a material part of the agreed exchange.

Nor do we find, as argued for by Plaintiff, that the legal doctrine of substantial performance should be applied to the case at hand. As explained by the court in Fort Washington Resources, Inc. v. Tannen, 901 F.Supp. 932 (E.D. Pa. 1995): [i]n Pennsylvania, the substantial performance doctrine is available to those who competently

16

perform in all material respects. Thus,

> [t]he equitable doctrine of substantial performance is intended
> for the protection and relief of those who have faithfully and
> honestly endeavored to perform their contracts in all material
> and substantial particulars, so that their right to compensation
> may not be forfeited by reason of mere technical, inadvertent,
> or unimportant omissions or defects.

Id. at 940 (quoting Mort Co. v. Paul, 167 Pa.Super. 532, 534-35, 76 A.2d 445, 447

(1950). As set forth above, the requirement that Plaintiff work until his designated release

date was a material term of the agreements entered into between the parties. Plaintiff did

not work until this date and therefore, he did not "competently perform in all material

respects." Id. This is not a situation where a plaintiff's right to compensation would

otherwise "be forfeited by reason of a mere technical, inadvertent, or unimportant

omission[s] or defect[]." Id.

An express requirement of the agreements between the parties was that Plaintiff

work for STERIS until his designated last day of work. Plaintiff did not fulfill this

express requirement because he did not remain employed by STERIS until his designated

last day of work. Therefore, Defendant had no obligation to pay Plaintiff either the bonus

pay or the severance pay and benefits at issue. Defendant's Motion for Summary

Judgment on Plaintiff's breach of contract claim is granted.

17

## IV. Conclusion.

For the reasons set forth above, Defendant's Motion for Summary Judgment on

Plaintiff's WARN Act and breach of contract claim is granted. Judgment shall be entered

in favor of Defendant and against Plaintiff. An appropriate Order follows.

November 25, 2009

*Maurice B. Cohill, Jr.*

Maurice B. Cohill, Jr.
Senior District Court Judge

18